## EDMUND L. BAYLIES & others *vs.* JOHN L. PAYSON.

Certain of the heirs at law of a testatrix who disputed the validity of the will orally proposed, through one of their number who acted for them all, to the executor, who was one of the residuary legatees, to compromise the matter by being admitted to an equal share of the estate with himself. After taking time to consider, he replied by letter, saying that he consented to relinquish one half of his just right to the estate, and pay over the same to them, when in cash, and stating what he would do as to some minor legacies given in the will, if they did not object, and saying that he had made these proposals from a sole regard and respect to the memory of the testatrix, wishing to avoid the painful consequences that would unavoidably arise from a public litigation, and that his offer was made upon the understanding that they would remove all impediments to his freely passing the will through the probate court, he holding himself responsible for the payment to them of the said share, and then he should attend to his duties as executor. A reply was sent, simply acknowledging the receipt of the letter, and acceding to the suggestions as to the minor legacies; to which the executor replied, saying that he inferred that they consented to the terms proposed in his former letter. *Held*, that this constituted a valid agreement by the executor, that upon the settlement of the estate he would pay over to them one half of the share devised to him, and that this agreement created a trust, and constituted him a trustee; and that it was immaterial that while this correspondence was going on the counsel of the parties and one of the heirs, being informed that the executor had agreed to settle by relinquishing one half of the share devised to him, but not having seen his letter, agreed upon the terms of a written instrument, providing that simultaneously with the probate of the will he should execute and deliver a conveyance of the share of the estate agreed upon, which he refused to sign; that the counsel for the heirs afterwards in writing notified the counsel of the executor that they considered the execution of this agreement essential; that the executor afterwards formally withdrew his proposals for a settlement; and that preparations were afterwards made by one of the heirs for contesting the will, and negotiations were had between the counsel of the respective parties as to the time for the hearing upon the question of the probate of the will.

A bill in equity does not lie merely for the purpose of declaring a trust, even though the defendant denies the existence of the trust; but if he is about to leave the country, the trust may be declared, and the bill retained for further direction.

BILL IN EQUITY to compel the specific performance of an agreement for a family compromise.

The bill set forth that the plaintiffs, Edmund L. Baylies, Elizabeth Hoffman and Ruth P. Livingston are the only children and heirs at law of Eliza A. Baylies, deceased, who was a daughter of Ruth Payson, lately deceased ; that the plaintiffs, with the defendant and Mary Mulliken, are the only heirs at law of Ruth Payson; that in April 1858 Ruth Payson, being then of an extremely old age, and enfeebled and decayed in mind and memory, executed a written instrument purporting to be her will, containing the following clauses :

" 1. I give to each of my grandchildren, Elizabeth Hoffman, wife of Wickham Hoffman, Esquire, Ruth Payson Livingston, wife of ———— Livingston, Esquire, and to Edmund Lincoln Baylies, one hundred dollars, as a token of my affection. 2. I give to my niece Elizabeth C. Soley one hundred dollars, as a token of my affection for her. 3. I give to my niece Ruth Z. Soley an annuity of fifty dollars a year during her life, in half-yearly payments. 4. All the residue and remainder of my estate, real and personal, of every description, I give and devise to my two surviving children, Mary Larkin Mulliken and John Larkin Payson, and their respective heirs, executors, administrators and assigns, forever. 5. I appoint my said son John Larkin Payson to be sole executor of this will."

The bill further set forth that the defendant procured the execution of this will by the testatrix, in his presence and under his direction ; that Ruth Payson died in March 1860, and the defendant gave notice by publication of his intention to offer the will for probate on the 23d of April 1860; that on the 20th of said April the plaintiff Edmund L. Baylies had an interview with the defendant in the city of New York, and informed him that the plaintiffs would oppose the probate of the will, and that the plaintiffs did not object to the provision for Mary Mulliken, and if the will had devised one half of the estate to her, and the other half in equal shares to the plaintiffs and the defendant, the plaintiffs would not have objected to it ; that on the following day the defendant asked said plaintiff if the plaintiffs would

take one sixth of the estate and settle the matter, to which said plaintiff replied that they would not, and that they stood out for the principle of the thing, and were determined to stand upon precisely the same footing as the defendant; that the defendant thereupon stated that upon his return home to Boston he would decide what to do, and immediately returned to Boston; that the plaintiffs thereupon retained Francis E. Parker, a counsellor of this court, to oppose the will; that on the 23d of April, William Minot, Jr., as attorney of the defendant, called upon the plaintiff Wickham Hoffman, and upon Mr. Parker, in Boston, and stated that he came on behalf of the defendant to say that the latter had concluded to settle the matter upon the suggestion made by Baylies, on condition that the plaintiffs should withdraw all opposition to the probate of the will; that Hoffman thereupon stated that he had no doubt the proposition would be accepted, but preferred to procure the consent of all the parties, and would write for it immediately, which he accordingly did; that Baylies immediately upon the receipt of this letter consulted with the other plaintiffs, and telegraphed to Hoffman to " compromise at one quarter," of which Mr. Minot was informed on the 24th of April, and it was then proposed by the attorneys that the agreement should be at once reduced to writing; that a writing was thereupon prepared by them, reciting the offer of the will for probate, and the existence of doubts as to its validity, and the agreement of the parties, as above stated, and concluding as follows: " Now therefore I, the said John Larkin Payson, . . . . . . . do covenant and agree with the said heirs . . . . . . . simultaneously with the probate of said will, to execute and deliver to the said Edmund Lincoln Baylies, Elizabeth Hoffman and Ruth Payson Livingston, a sufficient conveyance in fee of one undivided quarter part of all the real estate of which the said testatrix died seised or possessed, with special warranty against myself, and also to execute and deliver an assignment and transfer to said heirs of Eliza Baylies of one undivided quarter part of all the personal property; " that on the same day the defendant returned this agreement to Mr. Minot, declining to sign it, as unnecessary, because he had

already in a letter to Baylies put the agreement in writing; that another writing was prepared by the attorneys at the same time with the former for the plaintiffs to sign, waiving notice of the offer of the will for probate, and requesting that it might be proved and allowed, which the plaintiffs executed and forwarded to Mr. Parker on the 27th of April; that on the 24th of April the defendant wrote to Baylies as follows:

"Boston, 24 April, 1860.

"E. L. Baylies, Esq.

"Sir: My son will have told you that I have consented to relinquish one half of my just right to the estate of my lamented mother to yourself and sisters, and pay over to you and them, when in cash, one fourth of the net proceeds of the same, two fourths to Mrs. Mulliken, and retain one fourth part to myself; which will not compensate me for expenses I have incurred towards the support of my mother's family, and my own personal sacrifices made for her comfort, since my return to America in 1845.

"In the disposal of the property, if you do not object, I shall reserve the legacy of fifty dollars per annum for Miss R. Soley, and a hundred dollars given to Miss E. Soley; cancelling the one hundred dollars each to yourself and sisters.

"The furniture and the like, which will be appraised, has mostly been taken by my sister, excepting a few articles, gifts from me to my mother, and some trifles to Mrs. Payson for her unceasing devotion to my dear parent.

"I have made these proposals from a sole regard and respect to the memory of my dear mother, wishing to avoid the painful consequences that would unavoidably arise from a public litigation. At the same time, it is justice to myself, under existing circumstances, to clearly state that I had no more influence upon my mother's doings in the making of the will than yourself. It was always her intention to dispose of her property as she has done, basing her views upon those that were contained in a previous will.

"My offer is made upon the understanding that you will remove all impediments to my freely passing the will, as it now

stands, through the probate court; holding myself, as above stated, responsible for the payment of one fourth of the net estate to yourself and sisters, and then I shall attend to my duties as executor."

That Baylies replied as follows :

" New York, April 26, 1860.

'John L. Payson, Esq.

" Sir : Your favor of the 24th inst. I have received.

" As regards the legacy of fifty dollars per annum to Miss R. Soley, it would give us much pleasure to increase the amount; say, Miss R. Soley should have the interest of three thousand ($3000) dollars during her lifetime. Mrs. Mulliken might give one half of this sum, (three thousand dollars,) yourself one quarter, and we one quarter. Should you see fit to join with you, as administrator, Mr. William Minot, Jr., it would be acceptable to us, and perhaps more agreeable to yourself."

That the defendant replied as follows :

" Boston, 28th April, 1860.

" E. L. Baylies, Esq.

" Sir : Your letter of 26th inst. is received. From its contents I infer that you consent to the terms proposed in mine of 24th inst. ; to which, having nothing to add, I am," &c.

That in all these matters Baylies was acting for all the plaintiffs, and all that he did in the premises was communicated to and approved by them, and, in consequence thereof, the plaintiffs regarded the agreement as fully concluded; but that on the 4th of May 1860 Baylies received a letter from the defendant, conveying the information that, as the proposals of the latter had not been accepted either in the form or spirit in which they were made, he should withdraw them entirely; that Baylies replied, on the 21st of May, expressing his surprise, the readiness of the plaintiffs to carry out the agreement, and their determination to hold the defendant to the performance of it; that the defendant replied, adhering to his withdrawal; that on the 3d of July the will was offered for probate, and the plaintiffs, by their counsel, filed their assent, as hereinbefore set forth, and the will was then proved and allowed ; and that the defendant

refuses to perform his part of the said agreement, and is about to depart out of the limits of the United States, with the intention, as the plaintiffs believe, not to return. The prayer was, that the defendant might be decreed specifically to perform the said agreement, and that the plaintiffs might be decreed to be entitled to a specific lien upon so much of the estate as would otherwise belong to him, and for further relief.

The answer denied that Ruth Payson at the time of executing her will was enfeebled or decayed in mind or memory, or that the will was drawn under the defendant's direction; and averred that in 1846 she executed a prior will, a copy whereof was set out at length, similar in all respects to her last will, except that therein the residue of her estate was given to Mary Larkin Mulliken, the defendant, and a daughter since deceased; and that the testatrix requested to have another will prepared in which the share of her deceased daughter should be given to Mary Mulliken and the defendant; admitted that in the interview with Baylies in New York on the 20th of April the latter stated substantially as set forth in the bill, and averred that the defendant then stated that the will was made in accordance with the well understood intentions of the testatrix; that the defendant had been enabled to pass the last years of his life in her company only at great inconvenience to himself and his family; that the father of said Baylies had stated to her that he did not wish to have himself or his family considered in the disposition of her property, to which the said Baylies replied that this was done in the expectation that Mrs. Mulliken would have all the property; that the defendant further stated that although he had no doubt as to the validity of the will, he was exceedingly desirous to avoid family differences or any disagreeable feelings on the part of any of the plaintiffs, and still more any public family controversy as to the mental capacity of the testatrix, and inquired if the plaintiffs would be satisfied with one sixth part of the property, and, upon the statement by Baylies that they would not, but that they were determined to receive as large an amount as himself, he stated that after his return to Boston he would decide what to do, and would write to Baylies his

decision ; and in pursuance of this statement wrote the letter of April 24th ; that he was not bound by any agreement which may have been made, if any was made, between Minot and Parker, and that he had no intention to be bound except by the terms of his letter; that said agreement, if made, was void by the statute of frauds ; that the plaintiffs themselves did not believe any contract to have been then made ; that his letter of April 24th to Mr. Minot, declining to sign the agreement which had been prepared, was as follows : " In reply to your note of this date, you will please remember that I clearly stated to you yesterday, that, if my health would allow, I should write to Mr. Lincoln Baylies on that date ; otherwise, on this day : which I did this morning, confirming the statement I made to you, viz : That I consent to pay over to him and his sisters, when encashed, the net proceeds of one fourth part of my mother's estate, two fourths to Mrs. Mulliken, retaining one fourth for myself, after paying the legacies to Miss Ruth Soley and Miss E. Soley. I see no necessity of my signing any other document — least of all, one obliging me to acknowledge any doubt as to the perfect validity of my mother's will ; and therefore return you the enclosed document ; " that after the letter of Baylies, of April·26th, and after the reply thereto had been sent, and after Baylies had been informed that the defendant declined to sign any other document than his said letter, to wit : on the 28th of April, he learned that the plaintiff Hoffman had been making diligent inquiries for the purpose of establishing the incapacity of the testatrix, and thus became aware that one great object of his proposal in his letter of April 24 — that of avoiding a public discussion upon the subject of her capacity — was defeated ; that on the 30th of April Mr. Minot read to him a letter from the attorney of the plaintiffs, of that date, containing the following paragraph : " As I have not heard of the execution of the agreement by Mr. Payson, I presume that the will is not to be offered for probate to-day. If it is to be, please let me know it. Mr. Baylies's children consider the execution of the agreement essential ; and I think Mr. Payson also will see that. if the arrangement is to be carried into effect, it must be done

by the customary forms, which alone can secure against the risks of life and capacity to act, to which all the parties are subject;" that the defendant understood and believed from this letter that unless he signed the proposed agreement the plaintiffs would continue their opposition to the probate of the will, and that they deemed the execution of the agreement by him as essentially necessary to any arrangement between them and him; that the defendant refused to sign any other document, and afterwards determined to withdraw the proposal contained in his letter of April 24, because the same had not been accepted, and the proposed written agreement differed substantially from that offered by him, and he had been informed and believed that they deemed the execution of it essential, and, inasmuch as the matter had become to a great extent public, he thought it proper that the capacity of the testatrix to make a will should be fully investigated and vindicated in a court of justice, and especially that it should be shown that her will was not made under any improper influence from him; that no claim was made that any agreement had been completed, when notice of the withdrawal of his proposal was given to the counsel of the plaintiffs, or at any time prior to the letter of Baylies of May 21st; that he retained Benjamin F. Thomas and Charles Devens, Jr., as counsel to aid in sustaining the will; that on the 4th or 5th of May said Thomas had an interview with the counsel of the plaintiffs, for the purpose of arranging a time which should be mutually convenient for the hearing, and fixed upon Monday, a fortnight thereafter, for that purpose; that, a few days after, said Thomas had a second interview with said Parker to ascertain whether the latter desired to go into a full hearing on the will, or only to cross-examine the witnesses thereto, and afterwards enter his appeal, in case their testimony should be found satisfactory to the judge of probate, and was informed by said Parker that he should take the latter course; that no claim of a concluded agreement was made at either of these interviews, and preparations for the hearing were made by both parties; that in the interval between the 2d and 21st of May the plaintiffs had frequent interviews with each other and with their

counsel, and became satisfied that they could not successfully contest the will; that at the time when the will was proved, he appeared with his counsel, who stated that he did not desire to recognize the assent of the plaintiffs, or to depend thereon in any degree, but wished to produce such evidence as would satisfy the court, without such assent, and thereupon all the witnesses to the will were called and examined, and upon their testimony the will was admitted to probate; and that it is true that the defendant is about to depart from the United States, but not with the intention not to return. In relation to various other matters alleged in the bill, the answer either admitted the same, or professed the defendant's ignorance thereof.

At the hearing, before *Hoar,* J., the plaintiffs introduced the testimony of William Minot, Jr., and Francis E. Parker, and the defendant introduced the testimony of Charles Devens, Jr., and the deposition of Francis Payson, upon various of the matters alleged in the bill and answer. Mr. Minot testified to various interviews and negotiations, letters and agreements, substantially as set out in the bill and answer. Mr. Parker testified that he first knew of the correspondence between Baylies and the defendant a few days before the 21st of May, and never was authorized to waive any agreement for a compromise. He also testified to negotiations with the counsel of the defendant as to the time for the hearing upon the question of the probate of the will, before and after the 21st of May. The case was thereupon reserved for the determination of the whole court; was argued in November 1861, when it was decided that the bill was prematurely brought, for the purpose of enforcing specific performance of the alleged agreement; and again in November 1862, upon the question whether the bill might be maintained for the purpose of declaring and enforcing a trust.

*B. R. Curtis & F. E. Parker,* for the plaintiffs. The plaintiffs made a definite proposal, through Baylies, to forego their opposition to the will, and receive from the estate the same share as the defendant; the latter took time to consider their proposal, and promised to write to Baylies his decision; and in pursuance of this promise wrote the letter of April 24, declaring in terms

that he had consented. This letter made a concluded agree-
ment to share equally with the plaintiffs what was given to him
by the will. He makes no new conditions. The other ex-
pressions in the letter do not vary the effect of this language,
which clearly expresses the union of two minds, agreeing upon
a definite thing. The respondent understood it as a concluded
agreement at the time. And upon this question, whether there
was an agreement arising out of the written correspondence,
and the uncontroverted facts accompanying it, the subsequent
acts and declarations of the plaintiffs' counsel are unimportant.
*Rowland* v. *Phalen*, 1 Bosw. 43. Nor can these acts and decla-
rations be considered as a waiver of the agreement, because he
was ignorant of the correspondence now in the case, which con-
tains the agreement. He did not know that the defendant had
already signed a sufficient memorandum. This being an agree-
ment for a family compromise, fairly made, a court of equity
will uphold it with a strong hand. 1 Story on Eq. §§ 131, 132,
and cases cited. No waiver or abandonment of the agreement
was shown. *Robinson* v. *Page*, 3 Russ. 114. *Carolan* v. *Bra-
bazon*, 3 Jones & Lat. 200. *Fowle* v. *Freeman*, 9 Ves. 351.
*Thomas* v. *Dering*, 1 Keen, 740. *Rowland* v. *Phalen*, 1 Bosw.
43. Even if it be viewed as a proposal by the defendant, it was
assented to in writing by the plaintiffs. It was also assented to
by parol, by telegraph ; and a parol assent to a written proposal
is sufficient. *Boston & Maine Railroad* v. *Bartlett*, 3 Cush.
224. *Old Colony Railroad* v. *Evans*, 6 Gray, 25. *Foster* v.
*Boston*, 22 Pick. 33.

The agreement created a trust in the defendant to have the
estate apportioned between himself and Mrs. Mulliken, and to
pay over to the plaintiffs one half of his share. *Wylie* v. *Coxe*,
15 How. (U. S.) 415. *Maxwell* v. *Whieldon*, 10 Cush. 221. 1
Story on Eq. § 132, and cases cited. 2 Story on Eq. §§ 1044,
1231, and cases cited. *Legard* v. *Hodges*, 1 Ves. Jr. 477.
*Clarke* v. *Southwicke*, 1 Curtis C. C. 299, and cases cited. The
defendant denied the existence of the trust, and was about to
leave the country. Under these circumstances, the plaintiffs had
a right to file their bill and obtain the aid of a court of equity

to have the trusts declared, and the fund protected and the trusts executed under the direction of the court. 1. To have the trusts declared. Lewin on Trusts, 609, and cases cited. *Waller* v. *Fowler*, Sausse & Scully, 274, 294. *Hanly* v. *Sprague*, 20 Maine, 431. A bill may even be brought to have the right of a claimant in remainder declared during the life of the tenant for life. *Knight* v. *Knight*, 3 Beav. 148. *Dorchester* v. *Effingham*, Ib. 180, *n. Prevost* v. *Clarke*, 2 Madd. 458. *Lorillard* v. *Coster*, 5 Paige, 172. *Hawley* v. *James*, Ib. 318. 2. To have the fund protected. 1 Story on Eq. § 604, and cases cited. Lewin on Trusts, 609. And where the trust fund is endangered by a denial of the trust by a trustee about to leave the country, and there is no remedy at law, there is a very strong ground of interference. Lewin on Trusts, 609. *Leake* v. *Leake*, 1 Jac. & Walk. 605. *Scott* v. *Becher*, 4 Price, 346. *Clark* v. *Flint*, 22 Pick. 231. 3. The court should take the supervision of the execution of the trusts. Hill on Trustees, 190, 191, *n.*, 548.

*B. F. Thomas & G. F. Hoar*, for the defendant. The plaintiffs are not entitled to the aid of a court of equity, because the whole consideration which induced the defendant's offer has failed and can never exist. If this will had been defeated, the will of 1846 would have been in force. But the evidence shows that the testatrix was of sound mind. The sole motive of the defendant, therefore, was to avoid a public family controversy.

But no contract is disclosed, in respect to which the plaintiffs can have relief. The unexecuted memorandum clearly was not such a contract. Nor did the transactions between counsel amount to a contract. No contract was formed by the correspondence. The defendant's letter of April 24 required an acceptance, to become binding. If such acceptance might have been inferred by the letter of Baylies of April 26, in connection with the reply of April 28, the inference was entirely negatived by Parker's letter of April 30. Besides, what was offered by one party was not accepted by the other, in the same sense. The minds of the parties never met. The terms offered by Payson are set forth in his letter. The terms which the plaintiffs in·

tended to accept are embodied in the unexecuted memorandum. These terms were different, in various respects. See *Thornbury* v. *Bevill,* 1 Y. & Coll. Ch. 554. The acts of the plaintiffs until May 21 form a bar to the relief sought by them. Induced by them, the defendant withdrew his original offer, and prepared to establish the will. These acts may be regarded as an admission by the plaintiffs that no contract had ever been concluded between the parties, on which the defendant acted; or as an abandonment and rescission of such contract. A parol waiver is a bar. *Price* v. *Dyer,* 17 Ves. 356. *Robinson* v. *Page,* 3 Russ. 114. *Brooks* v. *Wheelock,* 11 Pick. 439. And a contract may be rescinded by acts and conduct, without an express agreement to that effect. *Goodrich* v. *Lafflin,* 1 Pick. 57. *Hill* v. *Green,* 4 Pick. 114. If a bargain was ever completed, the plaintiffs were bound to withdraw all opposition to the will. The proposal of April 24th was made under a misapprehension of the defendant's rights. It was founded on his belief that the whole estate, real and personal, came to him as executor. The plaintiffs have not alleged and proved a precise and certain contract, which is essential to entitle them to relief. *Boston &amp; Maine Railroad* v. *Babcock,* 3 Cush. 228. *Tatham* v. *Platt,* 9 Hare, 660. If any contract was ever completed, the plaintiffs have not performed their part of it. *Calverley* v. *Williams,* 1 Ves. Jr. 210. *Higginson* v. *Clowes,* 15 Ves. 516, and cases cited. *Neap* v. *Abbott,* Coop. Pract. Cas. 333. *Manser* v. *Beck,* 6 Hare, 74. *Colson* v. *Thompson,* 2 Wheat. 336. *Kendall* v. *Almy,* 2 Sumner, 278, 295. *Carr* v. *Duval,* 14 Pet. 77, 83. They continued openly to deny the validity of the will, and endeavored to collect evidence to establish its invalidity. See also *Myers* v. *Watson,* 1 Sim. (N. S.) 523. An acceptance, to be binding, must be clear and unequivocal. Fry on Specif. Perf. § 167. *Warner* v. *Willington,* 3 Drewry, 523. *Thomas* v. *Blackman,* 1 Colly. 301. If one party gives notice that he does not hold himself bound to perform, and will not, and the other makes no prompt assertion, he will be considered as acquiescing in the notice. Adams on Eq. 88. *Walker* v. *Jeffereys,* 1 Hare, 341, 348, and cases cited. *Rogers* v. *Saunders,* 16 Maine, 100.

The decree of specific performance is a matter of discretion. 2 Story on Eq. § 769.

The defendant entered into no agreement as executor. The trust of executor had not been assumed at the time. If he had declined that trust, the administrator with the will annexed could not have carried out or recognized the agreement. The agreement, if any was made, was made by the defendant in his private capacity. No express trust was created. No intent to create such trust appears in the letter itself. The last paragraph of the letter shows that the plaintiffs were to rely on the defend- ant's personal responsibility. There is no implied trust. The law never implies a trust, but in case of absolute necessity. *Cook* v. *Fountain*, 3 Swanst. 585, 591. The agreement in the letter does not come within what is sometimes said to be a rule of equity, that an agreement as to a specific existing subject matter raises a trust. The agreement concerns a share in the residuum under a will not then admitted to probate, and which, notwithstanding the agreement, might never be admitted to probate ; an interest which the defendant might thereafter pos- sess, at a future day uncertain. A contract as to a thing that may be afterwards acquired does not create a present lien or trust in the thing itself. *Kirwan* v. *Gorman*, 9 Irish Eq. 154, and cases cited. If no trust was created, or specific lien, the bill is premature, and the allegation that the defendant is about to leave the country is immaterial. It is not alleged that the intended departure is with a view to evade the process of the court, or that it will tend to impair the plaintiffs' security, or that the defendant has purposed to refuse to yield to their claim, if judicially established. It is, therefore, the ordinary case of a disputed legal claim. 2 Story on Eq. § 1470, *n.*

CHAPMAN, J. The principal questions submitted to the court in this case are, whether any agreement has been concluded be- tween the parties; and if so, what are its terms? It appears that the defendant gave notice of his intention to prove the will of Ruth Payson in the probate court on Monday the 23d of April 1860, and that Mr. Minot was retained as his counsel to transact the business. On Friday, April 20, Mr. Hoffman, one

41 *

of the plaintiffs, called at Mr. Minot's office, and notified him that he intended to oppose the probate of the will on account of the heirs of Mrs. Baylies, one of whom was his wife. On Monday the defendant called and gave Mr. Minot notice that his nephew, E. Lincoln Baylies, whom he had seen in New York, had made objections to the will, and had made a proposition for a compromise, on the basis that he and his sisters (Mrs. Hoffman and Mrs. Livingston) should receive one quarter of the estate ; that he had agreed to give an answer on his return to Boston, and had done so or was about to do so by writing a letter to Mr. Baylies accepting the proposal.

The defendant was then informed of the interview of Mr. Minot with Mr. Hoffman, and that Mr. Parker had been retained to oppose the will, and was advised that they should be informed of the proposed settlement ; and with his approbation Mr. Minot went to Mr. Parker's office, where he found Hoffman also, and informed them that the defendant had accepted the proposal of Baylies, and that the matter would be settled in that way. The reply was, in substance, an assent to such a settlement on the part of parties then in Boston, and an agreement to write or telegraph to New York for its acceptance by parties there. The will was not proved on that day ; and on the following day Mr. Hoffman informed Mr. Minot that he had received a telegram from New York, informing him that the compromise was assented to by the parties there. It was then proposed and assented to by the counsel on both sides that the agreement should be put in writing ; and a contract was drawn up, with which they were mutually satisfied, expressing what they regarded as the terms of the agreement. It was to be signed and sealed by the parties. Mr. Minot sent the paper to the defendant that day, with a note informing him that it was correct, and that it would operate to save the necessity of calling more than one witness to prove the will, and stating also the effect of the agreement. On the same day the defendant returned the paper to Mr. Minot, declining to sign it, stating his reasons for doing so, and informing him that he had written to Mr. Baylies, and that no other document was necessary. It is impossible, therefore,

to regard this paper as the agreement of the defendant, signed by him.

But on the same day the defendant wrote a letter to Mr. Baylies, stating the terms of the compromise particularly. This letter was signed by him, and appears by the facts to have been an acceptance of the offer made by Mr. Baylies in New York, with the addition of some details; and on the 26th of April Mr. Baylies replied to it, acknowledging its receipt, and by implication assenting to its terms.

There is a material difference between the terms of the contract drawn up by counsel and the terms of the defendant's letter, which seems not to have attracted the notice of counsel at the time. The contract provides for a conveyance by the defendant to the heirs of Baylies of an undivided fourth part of the estate, real and personal, simultaneously with the probate of the will. If this agreement had been signed, and its terms complied with on the part of the plaintiffs, a bill might have been maintained for its specific performance immediately after the probate. But the letter to Baylies agrees to pay the proceeds or value of one fourth part of the estate in cash. Its language is, " to pay over to you and them, when in cash, one fourth of the net proceeds of the same." The net proceeds cannot be ascertained till after the final settlement of the estate by the defendant as executor. The expenses of the last sickness and the funeral and of administering the estate must be first deducted; and if the testator left debts, they must be paid. A reasonable time must also elapse to ascertain whether any debts exist. Strictly speaking, the defendant has nothing to do in the fulfilment of such a contract until after he shall have settled the estate as executor, or at least till he shall have had a reasonable time to settle it. This bill cannot therefore be maintained on the ground that the plaintiffs are entitled to the specific performance of a contract which has been broken by the defendant. This was the ground on which the case was put at the first argument. But at a second argument, after the court had decided that the letter of the defendant to Baylies constituted the contract, another position was taken, namely, that the bill might

be maintained for the purpose of declaring and enforcing a trust This position requires the discussion of several new questions.

Upon consideration, the court are of opinion that a trust is created by the contract. Lord Thurlow, in *Legard* v. *Hodges*, 1 Ves. Jr. 478, states the maxim to be universal, " that wherever persons agree concerning any particular subject, that, in a court of equity, as against the party himself, or any claiming under him voluntarily, or with notice, raises a trust." Here the property bequeathed to the defendant is the subject of the contract, and he is bound to deal with it in good faith for the benefit of the plaintiffs, to the extent of one half its value. In the sale and in accounting for the proceeds, he acts as trustee for them. And in the mean time, so far as is necessary, he should preserve it for them.

The doctrine, as stated in 2 Spence on Eq. 860, is, that there must be an agreement to pay out of a particular fund, amounting to an appropriation of a part of the fund for the purpose. This describes the present case ; and the defendant is to be regarded as the trustee of the plaintiffs to manage and sell the property and pay over to them their share of the proceeds.

But an objection is here interposed, that the plaintiffs have not performed the contract on their part, and for that reason are not entitled to require its performance on the part of the defendant. On this point the court have never entertained any serious doubt. Within a reasonable time after the matter was understood, the plaintiffs filed in the probate court an assent to the probate of the will. No opposition to it was ever actually made in court by them. The case was continued by consent, and then the will was proved.

If, however, this constituted the whole case, we should have thought the bill ought to be dismissed. The plaintiffs contend that it could be maintained for the purpose of declaring the trust; but we do not think the mere declaration of a trust, where it consists merely of deciding that a certain contract has been made, and that it creates a trust, is a sufficient ground for maintaining a suit. Nor is it sufficient, even if the defendant

denies that he made the contract, if the denial is not fraudulent. And we are of opinion that in the present case the matter had become involved in so much doubt that the defendant might in good faith deny that there was a binding contract in existence. There was a dispute as to the terms of the contract, and as to its performance by the plaintiffs on their part. The defendant gave early notice that he denied its existence, on the ground that the plaintiffs had not accepted his offer. And though we find that it had been completed and was binding, and was performed by the plaintiffs, and constituted a trust, we cannot regard the defendant as guilty of any fraud in setting up these objections. Nor had he, when the bill was filed, in any respect broken his contract. He had proceeded to prove the will ; and, for aught that appeared or was alleged, he was proceeding to administer the estate.

But the bill contains an allegation that he is about to depart out of the limits of the United States to some foreign country, and this allegation is denied. There is no prayer for any specific relief on account of this fact, such as is usual in such cases, but merely the general prayer for relief. And all that seems to be proper is, that the trust shall be declared in conformity with the opinion herein stated, and the bill retained for further direction ; for when a trustee is about to leave the country, a court of equity will give such protection to the interests of the *cestui que trust* as the exigency of the case may require, and will retain a bill for future action.

The following decree was entered :

This case came on to be heard and was argued by counsel, and the court having considered the same do find and declare that a concluded agreement was made between the plaintiffs on the one part and the defendant on the other part, as is stated in the said bill, the terms whereof appear in and by the letter of the defendant of the date of the 24th day of April A. D. 1860, which is set out in the said bill, and that the plaintiffs are entitled to the specific performance thereof, and that by force of the said agreement the defendant became charged with the trust

of executing the said agreement; and that the defendant being about to leave the United States, without an intention to return, and having actually departed into foreign parts soon after the filing of the bill, and the plaintiffs being remediless by reason thereof save by the said bill, the court doth retain the same for the purpose of giving the relief to which the plaintiffs are justly entitled. And it is ordered that the plaintiffs have leave to apply to the court for such further directions as may be needful to compel the specific performance of the said trust.

The parties thereupon filed a written agreement, stating that the damages to which the plaintiffs were entitled under the foregoing decree were agreed to be $22,174.19, including costs; and a further decree was made, reciting the above agreement, and ordering and decreeing that the said sum is the amount which the plaintiffs are entitled to recover, and that the defendant pay the same.